UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION


CASE NO: 16-cv-22810-SCOLA/Otazo-Reyes


JANET KRUG and MICHAEL KRUG,

Plaintiff,

vs.

CELEBRITY CRUISES, INC.,

Defendant.


**DEFENDANT'S MOTION TO STRIKE AND/OR EXCLUDE PLAINTIFF'S EXPERTS, JEFFREY PERLSTEIN AND DAVID PECORARO,  PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(A)(2)(B), FEDERAL RULES OF EVIDENCE 702 AND DAUBERT**

Catherine J. MacIvor (FBN 932711)
cmacivor@fflegal.com
Darren W. Friedman (FBN 0146765)
dfriedman@fflegal.com
FOREMAN FRIEDMAN P.A.
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL  33131
Tel: 305-358-6555/Fax: 305-374-9077
Counsel for Defendant

# TABLE OF CONTENTS

Table of Contents...................................................................................................................ii

Table of Authorities ............................................................................................................iv

I.   Introduction ................................................................................................................ 1

II.  Krug's Experts' Reports Fail to Comply with Rule 26 ............................................. 1

III. Standard For Admissibility of Expert Testimony Under Rule 26 ........................... 4

IV.  Perlstein's and Pecoraro's Opinions Should be Excluded ....................................... 5

A.   Perlstein's and Pecoraro's First Opinions Should be Excluded............................... 5

1.   Perlstein is Unqualified to Render Opinions
     Concerning a Game on a Cruise Vessel .................................................................. 6

2.   As a Matter of Law Perlstein's First Opinion is Legally Invalid............................. 7

3.   Perlstein's First Opinion is Unreliable Because he Did Not Review
     Celebrity's SMS and His Best Practices Opinion is *Ipse Dixit* ............................. 7

4.   Perlstein's First Opinion is Unhelpful Because it is a Legal Conclusion ............... 9

5.   Pecoraro is Unqualified to Render Opinions on Cruise Industry Standards........... 10

6.   Pecoraro's First Opinion is Unreliable Because it is
     Based on Legally Invalid Standards and *Ipse Dixit* ............................................. 10

B.   Pecoraro's Second Opinion and Perlstein's
     Fourth Opinion Should be Excluded........................................................................ 11

1.   Pecoraro is Unqualified to Render his Second Opinion
     and it is Also Unreliable .......................................................................................... 12

2.   Perlstein is Unqualified to Render his Fourth Opinion
     and it is Also Unreliable .......................................................................................... 13

C.   Perlstein's Third Opinion and
     Pecoraro's Fourth Opinion Should be Excluded ..................................................... 15

1.   Perlstein is Unqualified to Render an Opinion
     Concerning the Mechanics of Running.................................................................... 15

2.   Perlstein's Fourth Opinion is Unreliable Because it is not
     Based on Record Evidence ................................................................. 16

3.   Pecoraro's Fourth Opinion Should be Excluded as Unreliable
     Becaused it is His *Ipse Dixit* ........................................................... 16

D.   Pecoraro's Third Opinion Should be Excluded as
     Unreliable and Unhelpful.................................................................... 17

E.   Perlstein's Second Opinion Should be Excluded as
     Unreliable and Unhelpful.................................................................... 18

F.   Perlstein's Fifth and Sixth Opinions Should be Excluded as
     Unreliable and Unhelpful.................................................................... 19

G.   Pecoraro's Fifth Opinion Should be Excluded as
     Unreliable and Unhelpful.................................................................... 20

H.   Pecoraro's Other Opinions Should be Excluded Because
     One was Not in His Report, They are Unreliable and Unhelpful ....... 20

Certificate of Compliance with Local Rule 7.1 ........................................... 21

Certificate of Service ................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Allison v. McGhan Med. Corp.,*
184 F.3d 1300 (11th Cir.1999) ..................................................................................4

*American Key Corp. v. Cole Nat'l Corp.,*
762 F.2d 1569 (11th Cir. 1985) ...............................................................................10

*Browder v. General Motors Corp.,*
5 F. Supp. 2d 1267 (M.D. Ala. 1998) ........................................................................8

*Calderon v. Reederei Claus-Peter Offen*,
2009 U.S. Dist. LEXIS 97565 (S.D. Fla. Oct. 20, 2009)............................................7

*City of Tuscaloosa v. Harcros Chems., Inc.,*
158 F.3d 548 (11th Cir. 1998) .............................................................................6, 15

*Clena Investments, Inc. v. XL Specialty Ins. Co.,*
280 F.R.D. 653 (S.D. Fla. 2012).............................................................................15

*D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield,*
411 F. Sup. 2d 483 (D.N.J. 2006) ........................................................................8, 13

*DataQuill Ltd. v. Handspring, Inc.,*
2003 U.S. Dist. LEXIS 2981 (N.D. Ill. Feb. 28, 2003) .............................................4

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993)...........................................................................1, 4, 9, 10, 11, 14

*Dyett v. North Broward Hosp. District,*
2004 U.S. Dist. LEXIS 30473 (S.D. Fla. Jan. 21, 2004) ...........................................3

*Elder v. Tanner,*
205 F.R.D. 190 (E.D. Tex. 2001).............................................................................3

*Farley v. Oceania Cruises, Inc.*
2015 U.S. Dist. LEXIS 30576, 2015 WL 1131015 (S.D. Fla. Mar. 12, 2015).......17, 18

*Gen. Elec. Co. v. Joiner,*
522 U.S. 136 (1997)...............................................................................................5, 9

*Greenwell v. Boatright,*
184 F.3d 492 (6th Cir. 1999) ...................................................................8, 13

*Guillory v. Domtar Indus.,* Inc.,
95 F.3d 1320 (5th Cir. 1996) ...................................................................8, 13

*Guinn v. AstraZeneca Pharms. LP,*
602 F.3d 1245 (11th Cir. 2010) ...................................................................9

*Haggerty v. Upjohn Co.,*
950 F. Supp. 1160 (S.D. Fla 1996) ...................................................................14

*Hendrix v. Evenflo Co., Inc.*
255 F.R.D. 568 (N.D. Fla. 2009) ...................................................................7

*Holland v. Walter Kidde Portable Equip.,*
2008 U.S. Dist. Lexis 109981 (N.D. Ala. March 24, 2008) ...................................7

*Holesapple v. Barrett,*
5 Fed. Appx. 177 (4th Cir. 2001) ...................................................................14

*In re Denture Cream Prods. Liab. Litig.,*
2012 U.S. Dist. LEXIS 152277 (S.D. Fla. Oct. 22, 2012) ...................................2

*In re TMI Litigation,*
193 F.3d 613 (3rd Cir. 1999) ...................................................................11

*In re Trasylol Prods. Liability Litigation,*
709 F. Supp. 2d 1323 (S.D. Fla. 2010) ...................................................................11

*Jack v. Glaxo Wellcome, Inc.,*
239 F.Supp.2d 1308 (N.D. Ga. 2002) ...................................................................15

*Johnson v. Horizon Lines, LLC,*
520 F.Supp.2d 524 (S.D.N.Y. 2007) ...................................................................7

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999) ...................................................................4

*Lapidus v. NCL Am. LLC,*
2012 U.S. Dist. LEXIS 82720 ...................................................................7

*Leroux v. NCL (Bah.) Ltd.,*
2017 U.S. Dist. LEXIS 94156 (S.D. Fla. June 19, 2017) ............................................................17

*McClain v. Metabolife Int'l, Inc.,*
401 F.3d 1233 (11th Cir. 2005) ....................................................................................7, 14

*McCorvey v. Baxter Healthcare Corp.,*
298 F.3d 1253 (11th Cir. 2002) ...........................................................................................4

*McDowell v. Brown,*
392 F.3d 1283 (11th Cir.2004) .............................................................................................8

*MDS (Can.), Inc. v. Rad Source Techs., Inc.,*
822 F. Supp. 2d 1263 (S.D. Fla. 2011) ...........................................................................6-7

*MDS (Can.), Inc. v. Rad Source Techs., Inc.,*
720 F.3d 833 (11th Cir. 2013) ..............................................................................................7

*Miller v. NCL (Bahamas) Ltd.,*
2016 U.S. Dist. LEXIS 184983 (S.D. Fla. April 5, 2016) (Ungaro, J.)........................11

*Mitchell v. Royal Caribbean Cruises, Ltd.,*
2013 U.S. Dist. LEXIS 186339 (S.D. Fla. June 7, 2013) (Ungaro, J.) ........................16

*Montgomery v. Aetna Cas. & Sur. Co.,*
898 F.2d 1537 (11th Cir. 1990) ..............................................................................9, 10, 16

*Navelski v. Int'l Paper Co.,*
2017 U.S. Dist. LEXIS 44411 (N.D. Fla. March 25, 2017) ...............................................5

*Pleasant Valley Biofuels, LLC v. Sanchez-Medina, Gonzalez, et al.,*
2014 U.S. Dist. LEXIS 85025 (S.D. Fla. June 23, 2014) ..........................................6, 10

*Presley v. Lakewood Eng'g & Mfg. Co.,*
553 F.3d 638 (8th Cir.2009) .................................................................................................6

*Reese v. Herbert,*
527 F.3d 1253 (11th Cir. 2008) ........................................................................................2, 3

*Rink v. Cheminova, Inc.,*
400 F.3d 1286 (11 Cir. 2005).................................................................................................4

*Rinker v. Carnival Corp.,*
753 F.Supp. 2d 1237 (S.D. Fla. 2010) ...........................................................................................7

*Romero v. Drummond Co.,*
552 F.3d 1303 (11th Cir. 2008) .....................................................................................................2

*Rosenfeld v. Oceania Cruises Inc.,*
2009 U.S. Dist. LEXIS 86714 (S.D. Fla. 2009)............................................................................4

*Slaughter v. Southern Talc. Co.,*
919 F.2d 304 (5th Cir. 1990) ......................................................................................................14

*Stecyk v. Bell Helicopter Textron, Inc.,*
295 F.3d 408 (3d Cir. 2002)....................................................................................................8, 13

*STS Software Sys., Ltd.,*
2008 U.S. Dist. LEXIS 17667 (N.D. Ga. Mar. 6, 2008)................................................................3

*Umana-Fowler v. NCL (Bah.) Ltd.,*
49 F. Supp. 3d 1120 (S.D. Fla. 2014) ...................................................................................16, 17

*United States v. Batchelor-Robjohns,*
2005 U.S. Dist. LEXIS 13552 (S.D. Fla. June 3, 2005) (Ungaro, J.) ...........................................2

*United States v. Delatorre,*
308 F. App'x 380 (11th Cir. 2009) .............................................................................................17

*United States v. Frazier,*
387 F.3d 1244 (11th Cir. 2004) .............................................................................4, 6, 9, 14, 17

*United States v. Masferrer, 3*
67 F.Supp.2d 1365 (S.D. Fla. 2005) (King, J.) ......................................................................5, 14

*Webb v. Carnival Corp.,*
2017 U.S. Dist. LEXIS 103856 (S.D. Fla. July 6, 2017)........................................................16, 18

**Statutes, Rules and Other Citations**
Federal Rule of Civil Procedure 26 ..................................................................................1, 2, 3, 20

Federal Rule of Civil Procedure 26(a) .................................................................................1, 2, 3

Federal Rule of Civil Procedure 26(a)(2) ..................................................................................1, 2

Federal Rule of Civil Procedure 26(a)(2)(A) ........................................................................2

Federal Rule of Civil Procedure 26(a)(2)(B) ............................................................1, 2, 3, 4, 8

Federal Rule of Civil Procedure 37(c) ..............................................................................2, 3, 4

Federal Rules of Evidence 702 ............................................................1, 2, 4, 8, 9, 10, 14

Federal Rules of Evidence 703 ..........................................................................................2

Federal Rules of Evidence 705 ..........................................................................................2

Defendant, Celebrity Cruises, Inc. ("Celebrity"), respectfully requests this Court to strike and/or exclude the Plaintiff's experts, Jeffrey Perlstein ("Perlstein") and David Pecoraro ("Pecoraro") pursuant to Federal Rule of Civil Procedure 26(a)(2)(B), Federal Rule of Evidence and 702 and *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) and states:

## I.   INTRODUCTION

Plaintiff, Janet Krug ("Krug"), sued Celebrity for the alleged negligent operation of a music trivia game (the "Game") in which she voluntarily participated while she was a passenger on the *Infinity*. [ECF 7]. Krug does not know why she slipped and fell and in the absence of any notice of a risk creating condition, Krug has argued that based on her liability experts' opinions concerning alleged hazards that Celebrity should have generally foreseen and eliminated, Celebrity should be held liable. Krug hired Jeffrey Perlstein ("Perlstein") as a maritime expert and David Pecoraro ("Pecoraro") as a theatre professional to opine on Celebrity's liability for the alleged negligent operation of the Game and cruise line "industry standards." *See* Perlstein's [ECF 93-7] and Pecoraro's [ECF 93-8] Expert Reports.

Celebrity respectfully requests this court to strike and exclude their opinions because (1) they fail to comply with Rule 26(a)(2)(B) since they did not disclose all of their opinions, did not provide the bases and reasons for them and did not list everything that they relied on to form them, (2) certain opinions are beyond their areas of expertise, (3) their opinions are unreliable because they failed to provide a methodological basis for them, (4) many of their opinions are unhelpful legal conclusions, (5) their opinions are based on unsupported speculation and conjecture, and (6) their opinions are not based on evidence, information and documentation, but rather impermissible inferences and do not meet the requirements of Rule 702. Since the parties' respective motions for summary judgment are pending before the Court, Celebrity respectfully requests this Court to rule on this Motion first so that the Court will then be able to make summary judgment rulings based on admissible evidence. [ECF 85, 87, 99, 101, 104, 107].

## II.   KRUG'S EXPERTS' REPORTS FAIL TO COMPLY WITH RULE 26

Federal Rule of Civil Procedure 26(a) includes requirements for disclosing expert testimony. Fed. R. Civ. P. 26(a)(2). A *full* written report is required from an expert who is "retained or specially employed to provide expert testimony in the case..." Fed. R. Civ. P. 26(a)(2)(B). Although, as the moving party, Celebrity bears the initial burden of showing a valid basis for striking Krug's experts and their reports, Krug bears the burden of demonstrating compliance with

the rule. *In re Denture Cream Prods. Liab. Litig.,* 2012 U.S. Dist. LEXIS 152277, 32-34 (S.D. Fla. Oct. 22, 2012) (Altonaga, J.). Compliance with Rule 26 is "'not merely an aspiration' as 'the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise'" *Reese v. Herbert,* 527 F.3d 1253, 1266 (11th Cir. 2008). When a party fails to provide information as required under Rule 26(a), Rule 37 authorizes the Court to sanction that party. *See* Fed. R. Civ. P. 37(c). Under Rule 37, if a party fails to comply with Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). The burden is on the proponent of the report to demonstrate that its actions were substantially justified or harmless. *Romero v. Drummond Co.,* 552 F.3d 1303, 1323 (11th Cir. 2008) (affirming district court's exclusion of experts because they provided only the general subject matter of their opinions); *United States v. Batchelor-Robjohns,* 2005 U.S. Dist. LEXIS 13552, *8-13 (S.D. Fla. June 3, 2005) (Ungaro, J.) (excluding expert report and precluding expert from testifying at trial for failure to comply with Rule 26(a)(2)(B)),

Both Perlstein's and Pecoraro's reports fail to comply with Rule 26(a)(2)(B). First, they did not disclose all of their opinions where both experts offered "stop work" opinions that are not even mentioned in their reports. [ECF 93-7 pp. 1-2 (section III); 93-8 pp. 3-4 (section VI); ECF 72-1 14:13-24, 39:11-15, 57:10-22; 70-1 60:24-25, 61:17-63:9, 64:10-25]. Second, the reports offer opinions in the form of a series of one sentence conclusory statements that fail to provide any details concerning the basis for their opinions in violation of the rule. [ECF 93-7 pp. 1-2 (section III); 93-8 pp. 3-4 (section VI)]. Rule 26(a)(2) requires that a party must disclose to other parties the identity of any witness it may use at trial under Federal Rules of Evidence 702, 703, or 705, that disclosure must be accompanied by a written report prepared by the witness and such report must contain, among other things, (i) a complete statement of all opinions the witness will express *and* the *basis and reasons for them*; and (ii) the data or other information considered by the witness in forming them. Fed. R. Civ. P. 26(a)(2)(A), (B). Finally, they also failed to disclose all of the materials they relied on to form their opinions by omitting the ISM Code and entertainment industry standards. [ECF 93-7 p. 1 (section II); 93-8 p. 3 (section V); ECF 72-1 13:10-14:10, 37:20-38:25, 51:1-19, 54:6-55:9; 70-1 25:14-25, 27:8-17, 28:11-17, 36:20-25, 39:12-42:5, 52:1-9, 59:14-24, 70:8-15, 71:12-21, 74:23-75:4]. The prejudice to Celebrity was patent because it was unable

to prepare for taking their depositions and to effectively cross-examine them because its lawyers were learning what the opinions actually were during deposition.

"'Disclosure of expert testimony' within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written' expert report containing 'a complete statement of all opinions' and 'the basis and reasons therefore.'" *Reese v. Herbert,* 527 F.3d at 1265 (citing Fed. R. Civ. P. 26(a)(2)(B)). "Expert reports must not be sketchy, vague or preliminary in nature and the disclosure must not be used as a means to extend a discovery deadline." *Dyett v. North Broward Hosp. District,* 2004 U.S. Dist. LEXIS 30473, * 4-5 (S.D. Fla. Jan. 21, 2004). At the conclusion of Section II of Perlstein's report, he states "[a]ny subsequential information provided will be used in consideration of a final report." [ECF 93-8 p. 1]. This sentence alone contemplates that his opinions in this case are not "final," which would, at a minimum, violate this Court's pre-trial order and Rule 26. [ECF 18]. Additionally, both Perlstein and Pecoraro rely on the International Safety Management ("ISM") Code and Pecoraro relies on "entertainment industry standards," but nowhere in their reports do they mention either the ISM Code or entertainment industry standards as something that they relied on to form their opinions, which prejudiced Celebrity's ability to prepare for an adequate cross-examination at this deposition. [ECF 93-7 p. 1 (Section II); 93-8 p. 3 (section V)]. In fact, Pecoraro specifically states his report "will focus on standards of safety for cruise ship passengers" not entertainment industry standards. [ECF 93-8 p. 1 (section I)].  The "Statement of Opinions" sections in their reports are simply a list of one sentence conclusions of fact and law. [ECF 93-7 pp. 2-3 (section III); 93-8 pp. 4-5 (section VI)]. There is no discussion whatsoever of the reasoning or basis for their opinions required by the rule. [ECF 93-7 pp. 2-3 (Section III); 93-8 pp. 3-4 (section VI)].

Rule 37(c)(1) requires absolute compliance with Rule 26(a), in that it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified. Fed. R. Civ. P. 37(c). Expert reports should be stricken if they "offer conclusory opinions" and do not "contain some discussion of [the expert's] reasoning and [the] thought process that lead to the[] ultimate opinions." *Elder v. Tanner,* 205 F.R.D. 190, 193 (E.D. Tex. 2001); *see STS Software Sys., Ltd. v. Witness Sys.,* 2008 U.S. Dist. LEXIS 17667, *6-7 (N.D. Ga. Mar. 6, 2008) (striking expert report that "stated hundreds of unsupported conclusory opinions" and contained "a summary of prior art references, claims charts containing quotes excerpted from these references, and a conclusion that a combination of references renders the

patent claims obvious"); *DataQuill Ltd. v. Handspring, Inc.,* 2003 U.S. Dist. LEXIS 2981, at *4 (N.D. Ill. Feb. 28, 2003) (striking expert report for failure to comply with Rule 26(a)(2)(B)). These reports failed to identify all of their opinions, failed to identify all of the materials on which they relied <u>and</u> are bereft of any details whatsoever concerning the basis and reasons for their opinions. Celebrity, therefore, respectfully requests that this Court strike these experts' improper and woefully inadequate reports and exclude their testimony pursuant to Rules 26(a)(2)(B) and Rule 37(c).

### III. STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY UNDER RULE 702

*Daubert* requires the district court to serve as a gatekeeper to ensure that "speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993); *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291 (11 Cir. 2005) (quoting *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002)). In determining the admissibility of expert evidence, the court engages in a rigorous three-part inquiry pursuant to *Daubert* and its progeny. Expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rosenfeld v. Oceania Cruises Inc.,* 2009 U.S. Dist. LEXIS 86714 *2-3 (S.D. Fla. 2009) (quoting *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004); *see also Daubert,* 509 U.S. at 589. The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there may inevitably be overlap, the three prongs remain distinct concepts that must be individually analyzed. *Frazier,* 387 F.3d at 1260. "The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999)).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir.1999). "Thus, the proponent must demonstrate that the witness is qualified to testify competently, that his opinions

are based on sound methodology, and that his testimony will be helpful to the trier of fact." *United States v. Masferrer,* 367 F.Supp.2d 1365, 1371-1372 (S.D. Fla. 2005) (King, J.). As will be demonstrated below, Perlstein's and Pecoraro's opinions are the type of black box[1] opinions that district courts routinely exclude.

## IV. PERLSTEIN'S AND PECORARO'S OPINIONS SHOULD BE EXCLUDED

Perlstein and Pecoraro's opinions should be excluded because they are unqualified to opine regarding certain topics, they are unreliable because they are simply black box opinions without objective criteria and untethered to record evidence to support them and they are unhelpful because they are rife with impermissible legal conclusions.

### A. PERLSTEIN'S AND PECORARO'S FIRST OPINIONS SHOULD BE EXCLUDED

Perlstein's first opinion is that "Celebrity's [ ] failure to provide safety training specific to hosting a guest activity is a failure of the [SMS] and a breach of standard of care and best practices." [ECF 93-7 p. 2]. Pecoraro's first opinion is nearly identical: Celebrity "did not practice industry standards when [it] did not provide any guest activity safety training for the employee who was the [host] of the [Game]. This management oversight contributed to the injuries suffered by [ ] Krug." [ECF 93-8 p. 4]. Celebrity seeks to exclude Perlstein's first opinion because (1) he is unqualified to render it, (2) as a matter of law, a breach of duty in a maritime negligence case cannot be premised on the International Safety Management ("ISM") Code, which requires the implementation of Celebrity's Safety Management System ("SMS"); (3) even if a breach of duty in a maritime negligence case could be predicated on the SMS, Perlstein never reviewed Celebrity's SMS and, therefore, the opinion is not premised on sufficient data, (4) his "best practices" opinion is inadmissible *ipse dixit,* and (5) the opinion is an improper legal conclusion that invades the province of the jury. Celebrity seeks to exclude Pecoraro's first opinion because (1) he is unqualified to render it, (2) it is unreliable because it is improperly based in part on Perlstein's opinion, which is improper, and he was unable to articulate any safety standards or any objective sources at all to support the methodology he used to arrive at his opinion, it is simply his

---

[1] "A 'black box' expert opinion. . .is one in which an expert's conclusion is stated without any reasoned explanation that would enable the Court, a jury, or an opposing party to meaningfully evaluate the process by which it was reached. [ ] Such an opinion is, essentially, an expert's *ipse dixit,* which the Supreme Court has admonished district courts against admitting into evidence. *Navelski v. Int'l Paper Co.,* 2017 U.S. Dist. LEXIS 44411, *30-32 (N.D. Fla. March 25, 2017) (citing *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997)

personal opinion and *ipse dixit*.

1. **PERLSTEIN IS UNQUALIFIED TO RENDER OPINIONS CONCERNING A GAME ON A CRUISE VESSEL**

Expert testimony is not admissible if the expert is unqualified to testify competently about the matters he intends to address. *See Frazier,* 387 F.3d at 1260; *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir. 1998). A district court must distinguish expert opinions "based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Presley v. Lakewood Eng'g & Mfg. Co.,* 553 F.3d 638, 643 (8th Cir.2009). Perlstein seeks to offer expert opinions on which the jury may rely regarding a Game played on a passenger cruise vessel, but he has no experience with games on passenger cruise vessels. [ECF 72-1 20:19-21:14]. His passenger vessel experience is limited to serving for a little over a year on two vessels that had only overnight sailings over twenty years ago. [ECF 72-1 18:12-23; 19:5-13; 19:24-20:10; 22:13-23:2; 26:2-6; 26:20-23]. He was never responsible for entertainment, including games. [ECF 72-1 20:19-21:14]. The majority of his experience is with commercial vessels such as salvage, crane, container, freighter, spy and research vessels, which did not include entertainment activities. [ECF 72-1 27:17-19]. During his brief experience on passenger cruise vessels, the ISM Code and SMS requirements, about which he opines in this case, were not in effect. [ECF 72-1 32:10-15]. He has never done any consulting work for a cruise line and no client has ever retained him to consult regarding activities, entertainment or games on cruise vessels. [ECF 72-1 9:14-10:6; 11:16-18].

When an expert witness such as Perlstein relies mainly on experience to show he is qualified to testify, "the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazie*r, 387 F.3d at 1261. Perlstein cannot do that because he has no background or experience in entertainment, including games, on passenger cruise vessels. *Pleasant Valley Biofuels, LLC v. Sanchez-Medina, Gonzalez, et al.,* 2014 U.S. Dist. LEXIS 85025, *12-13 (S.D. Fla. June 23, 2014) (excluding expert opinion as unqualified where expert had not performed duties as an escrow agent since 1972 and such experience had not "endowed him with a sufficient body of specialized knowledge to assist the trier of fact in understanding the evidence or issues of this case relating to the precise contours of [defendant's] duties as escrow agent or its performance of those duties"). Because Perlstein's experience bears an inadequate relationship to the subject of his opinions, it does not qualify him as an expert witness on the matter, and his testimony should be excluded. *See MDS (Can.), Inc. v. Rad Source Techs., Inc.,* 822 F. Supp. 2d 1263, 1319-20

(S.D. Fla. 2011) (finding expert unqualified where education and background had inadequate relationship to subject of proposed testimony), *aff'd in part & question certified,* 720 F.3d 833 (11th Cir. 2013) (per curiam). Perlstein fails to demonstrate how having no experience with onboard entertainment, including games, makes him qualified to render his opinions and they should, accordingly, be excluded.

**2. AS A MATTER OF LAW PERLSTEIN'S FIRST OPINION IS LEGALLY INVALID**

At his deposition, Perlstein specifically referred to the ISM Code to support his opinion that Celebrity's alleged failure to train the Game host was a failure of Celebrity's SMS and therefore a breach of a duty owed to Krug. [ECF 72-1 37:20-38:25; 39:1-25]. As a matter of law, Krug cannot premise any duty or breach on any alleged noncompliance with the ISM Code's SMS requirement. The ISM does not create or alter any duties that exist in General Maritime Law. *Lapidus v. NCL Am. LLC,* 2012 U.S. Dist. LEXIS 82720, *14 (S.D. Fla. June 14, 2012); *Rinker v. Carnival Corp.,* 753 F.Supp. 2d 1237, 1243 (S.D. Fla. 2010).  In *Calderon v. Reederei Claus-Peter Offen*, the court determined that the SMS cannot form the basis of a duty:

> As for the ship's safety manual and the Defendant's corporate safety policies, now required by the United States' adoption of the [ISM] Code, this Court agrees with another District Court that Congress merely desired to participate with other maritime nations in achieving safety goals, but did not intend to change long-established rules of law which govern liability and its allocation in general maritime law. *Johnson v. Horizon Lines, LLC,* 520 F.Supp.2d 524, 533 (S.D.N.Y. 2007) (decision involved Jones Act, but same reasoning would apply to LHWCA claims).

2009 U.S. Dist. LEXIS 97565, *12 (S.D. Fla. Oct. 20, 2009). As a matter of well-established law, Krug cannot base any duty or alleged breach on the vessel's SMS system via Perlstein's improper opinion testimony and it should, therefore, be excluded.

**3. PERLSTEIN'S FIRST OPINION IS UNRELIABLE BECAUSE HE DID NOT REVIEW CELEBRITY'S SMS AND HIS BEST PRACTICES OPINION IS *IPSE DIXIT***

In considering the reliability of the method used by an expert to reach his conclusions, the court must undertake an independent analysis of each step in the logic that leads to the expert's conclusions. If the analysis is deemed unreliable at any step, the expert's entire opinion must be excluded. *Hendrix v. Evenflo Co., Inc.* 255 F.R.D. 568, 578 (N.D. Fla. 2009) (*citing McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1245 (11th Cir. 2005) (emphasis added); *see also Holland v. Walter Kidde Portable Equip.,* 2008 U.S. Dist. Lexis 109981, *10-13 (N.D. Ala. March 24, 2008)

(noting that where an expert's opinions are based on insufficient facts or it is scientifically unreliable); *McDowell v. Brown,* 392 F.3d 1283, 1300 (11th Cir.2004) ("an expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions."); *Browder v. General Motors Corp.,* 5 F. Supp. 2d 1267, 1283 (M.D. Ala. 1998) ("Basing an "expert" opinion on facts not in evidence is not helpful to the trier of fact in understanding the evidence or determining a factual issue. *See* Fed. R. Evid. 702. An expert's testimony must be based on facts which enable to express a reasonably accurate conclusion (as opposed to conjecture or speculation."). "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus.,* Inc., 95 F.3d 1320, 1331 (5th Cir. 1996). "[T]o be permissible the expert must be in possession of the necessary facts which will allow the expert to form an accurate conclusion." *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield,* 411 F. Sup. 2d 483, 488 (D.N.J. 2006); *see also Stecyk v. Bell Helicopter Textron, Inc.,* 295 F.3d 408, 414 (3d Cir. 2002) ("it is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Greenwell v. Boatright,* 184 F.3d 492, 497 (6th Cir. 1999) (expert testimony "is inadmissible when the facts upon which the expert basses his testimony contradict the evidence."). Perlstein's conclusions are bereft of record facts.

Even if Perlstein was allowed to opine that an alleged failure of the SMS resulted in a legally recognized duty that Celebrity allegedly breached, neither the ISM nor any requirement of the ISM Code for a SMS is cited in his report per the requirements of Rule 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(B). Again, even if he had listed the relevant provisions of the ISM Code on which he relies in his report, and he clearly did not, he opined that running in the instant Game was a failure of Celebrity's SMS *without ever actually looking at Celebrity's SMS.* [ECF 72-1 39:1-15]. While he offered to modify his opinion if he ever looks at it, that would be an untimely opinion and does not change the fact that he offered an opinion that there was a failure without ever having seen it. [ECF 72-1 40 1-4]. He further opined that crew members at the Game failed to initiate a stop work, which was also never disclosed in his expert report. [ECF 93-7 pp. 2-3; 72-1 14:11-24, 39:7-15, 57:10-22].

Perlstein offered this opinion despite his testimony at his deposition that he is not aware of any SMS guidelines or policies for any of the major cruise lines that discuss how onboard entertainment games are to be operated. [ECF 72-1 52:21-25]. His conclusion that the failure to

provide safety training to the Game host was a failure of Celebrity's SMS is, therefore, without legal or factual foundation. *Guinn v. AstraZeneca Pharms. LP,* 602 F.3d 1245, 1255-56 (11th Cir. 2010) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.") (citing *Joiner,* 522 U.S. at 146). The analytical gap between the "data" upon which Perlstein relies and the "opinion" he offers simply is too wide to allow the opinion to be admitted. *Id.* at 146.

Finally, Perlstein's "best practices" opinion is actually just his personal opinion because he admits that there is no prohibition against running on a vessel "beyond best practices and common sense." [ECF 72-1 33:21-34:10]. When asked for the basis for this "best practices" opinion, Perlstein was unable to articulate any except "safety is safety."  [ECF 72-1 32:17-20]. For the reasons cited above, expert *ipse dixit* is not admissible and should be excluded.

**4. PERLSTEIN'S FIRST OPINION IS UNHELPFUL BECAUSE IT IS A LEGAL CONCLUSION**

Expert testimony is admissible only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is helpful if it "concerns matters that are beyond the understanding of the average lay person," but expert testimony generally is not helpful "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier,* 387 F.3d at 1262-63 (citations omitted). Thus, while "[a]n expert may testify as to his opinion on an ultimate issue of fact[,] . . . [a]n expert may not . . . merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir. 1990) (alterations added; citations omitted). Similarly, an expert "may not testify to the legal implications of conduct; the court must be the jury's only source of law'" *Id.* (citations omitted).

Perlstein's first opinion is unhelpful because it consists entirely of an impermissible legal standard. Experts are not permitted to explain to the jury what the applicable legal standards are. *See Montgomery,* 898 F.2d at 1541; *Burkhart v. Washington Metro. Area Transit Auth.,* 112 F.3d 1207, 1213 (D.D.C. 1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." (citation omitted)). At his deposition, Perlstein stated, that the ISM is applicable to this case "to recognize and reduce hazards in the workplace" and cited specific sections of the ISM Code for the first time

which he believes supports that conclusion.  [ECF 72-1 38:18-39:25; 93-7 pp.2-3 (sections II and III) ] ("…the safety management system has to provide [safety training]").  This testimony is rife with impermissible legal conclusions: not only does it tell the jury what result to reach, but it is also couched almost entirely in the language of regulations and purported standards that are not legally viable in a maritime negligence matter. These and similar statements are not helpful to the jury and should, therefore, be excluded. *Montgomery,* 898 F.2d at 1541 (holding district court abused its discretion in allowing expert to testify that a party "had a duty to hire tax counsel"). Perlstein's reliance on the ISM Code as the foundation of his opinion concerning Celebrity's alleged breach of standard of care based on Celebrity's SMS is a legal conclusion. [ECF 72-1 13:20-15:7; 37:20-38:25]. This is unhelpful to the jury because it is nothing more than impermissible legal standard testimony. *See Pleasant Valley Biofuels,* LLC, 2014 U.S. Dist. LEXIS 85025, at *14 (excluding expert testimony reciting legal standards because "[a]n expert witness may not testify as to the state of the law . . . ; this is the Court's duty." (citation omitted)).

**5. PECORARO IS UNQUALIFIED TO RENDER OPINIONS ON CRUISE INDUSTRY STANDARDS**

Pecoraro's report specifically states that it "will focus on standards of safety for cruise ship passengers…." [ECF 93-8 p. 2]. However, Pecoraro has no experience in working on cruise ships, he has never been hired to train personnel on cruise ships and he claims his experience in cruise training is limited to a student who took a job working for a cruise line. [ECF 70-1 25:14-26:7; 26:14-18; 36:20-25; 37:1-4; 38:11-15; 39:4-11; 59:8-13]. All of his opinions concerning industry standards should be excluded because (1) he is unqualified to opine on cruise industry standards, (2) to the extent that he relies on "entertainment industry standards," they were not disclosed in his report and should be stricken accordingly. [ECF 70-1 [ECF 70-1 pp. 36:20-25, 39:12-42:5]. Based on the legal authorities set forth in sections II and III(A)(1) above, Pecoraro is unqualified to opine regarding cruise ship safety standards and should be precluded from offering undisclosed opinions concerning entertainment industry standards.

**6. PECORARO'S FIRST OPINION IS UNRELIABLE BECAUSE IS IT BASED ON LEGALLY INVALID STANDARDS AND *IPSE DIXIT***

Pecoraro's first opinion that Celebrity did not practice "industry standards" was premised in part on Perlstein's reference to the ISM code. [ESF 72-1 39:12-40:2]. To the extent that he did so, it is improper per section II, III(A)(2) and (5) above. Pecoraro cannot blindly rely on Perlstein's opinion and still meet the reliability requirements of Rule 702 and *Daubert. American Key Corp.*

*v. Cole Nat'l Corp.,* 762 F.2d 1569, 1580 (11th Cir. 1985) (holding that expert opinions based upon opinions of others are normally inadmissible); *see In re TMI Litigation,* 193 F.3d 613, 716 (3rd Cir. 1999) (holding that expert's "failure to assess the validity of the opinions of the experts he relied upon together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results"). Pecoraro's ISM Code opinion should, therefore, be excluded.

He also claims to base his first opinion in part on his professional experience where he "observed, not only the way that the industry in areas of [his] responsibility are addressing situations, such as the accident that occurred in this case, and preventing them by making them safe. [His] observations as well are from [ ] colleagues and other industries, those working in venues on Broadway those, working in theme park environments, and those that [he] hear[s] when [he] sit[s] in safety meetings at industry standard conventions." [ECF 72-1 40:3-18]. However, Pecoraro's expert report specifically states that he would focus on "standards of safety for cruise ship passengers," but when asked a simple question about whether the "industry standards" in his report are cruise ship industry standards he failed to articulate *any* standards and appeared to rely on the non-descript "entertainment industry standards" described above that contradict his statement in his report that he will focus on cruise industry standards. [ECF 93-8 at p. 2]. When asked if he looked at any cruise line industry standards to form his opinion, he referred to Celebrity's Event Guidelines and admitted that he did not compare that document to documents from any other cruise lines to know what the cruise industry standard actually is. [ECF 72-1 41:14-19].  In any event, Pecoraro's apparent inability to reference *any* objective safety standards or any objective sources at all, fails to demonstrate any methodology as to how he arrived at these opinions and they are, therefore, unreliable. *Miller v. NCL (Bahamas) Ltd.,* 2016 U.S. Dist. LEXIS 184983, *21-22 (S.D. Fla. April 5, 2016) (Ungaro, J.) (excluding expert opinion used in summary judgment briefing because no safety standards or objective sources were used and the opinion amounted to *ipse dixit* personal opinions) (*citing In re Trasylol Prods. Liability Litigation,* 709 F. Supp. 2d 1323 (S.D. Fla. 2010) (excluding an expert witness because his opinions were not based on applicable standards and amounted to no more than the witness's personal opinion).

**B. PECORARO'S SECOND OPINION AND PERLSTEIN'S FOURTH OPINION SHOULD BE EXCLUDED**

Pecoraro's second opinion is that Celebrity "did not practice safe industry standards when [it] assigned the [Game] to a venue where alcohol consumption is permitted and the floor is

polished. This decision contributed to the accident. [ECF 93-8 p. 4]. Perlstein's fourth opinion is "Celebrity [ ] conducted the [Game] where consumption of alcohol is not only permitted but encouraged. [ECF 93-7 p. 4]. Celebrity seeks to exclude Pecoraro's second opinion because (1) he is unqualified to render an opinion about the slipperiness of the floor and (2) his opinion is unreliable since there is no evidence to support that the alleged incident was caused due to a slippery floor or alcohol being served at the venue. Celebrity seeks to exclude Perlstein's fourth opinion because (1) he is unqualified to render it and (2) it is also unreliable because it is bereft of factual support in the record.

**1. PECORARO IS UNQUALIFIED TO RENDER HIS SECOND OPINION AND IT IS ALSO UNRELIABLE**

According to Pecoraro, the introduction of liquids to a dance floor that is "slippery" and alcohol being offered to contestants in a game venue increases the _possibility_ of injury. [ECF 70-1 42:20-43:7]. Pecoraro offers no explanation as to how his experience in the theatre (or any of his other experience) qualifies him in any way whatsoever to opine on the slipperiness of a polished floor and he provides no objective basis for his determination that the floor was even slippery other than his _ipse dixit._ [ECF 70-1 69:9-16]. This opinion ignores Krug's testimony that the floor did not feel slippery. [ECF 70-1 44:25-45:16]. He never inspected the floor and he admits that he is not an expert in friction and slip resistance and is therefore unqualified to render the opinion that a polished floor increases the _possibility_ of falling. [ECF 70-1 (Pecoraro Depo.) 45:17-47:19]. For all the reasons set forth in section III(A)(1) above, Pecoraro's opinion on the slipperiness of the floor should be excluded as he is unqualified to render the opinion.

His second opinion is also subjective, speculative, and unreliable. He fails to identify and/or utilize any sort of scientific methodology which objectively explains how he reached his conclusions. Moreover, his opinion is rendered without even considering the evidence in this case and by purposely disregarding facts in the record. Even though he admits that he is not aware of any evidence that alcohol was a factor in the alleged incident, Pecoraro nevertheless offers the hypothetical opinion that the _possibility_ of injury is increased when alcohol is present. [ECF 70-1 42:20-43:14; 43:25-44:7; 49:16-50:7] (Q. (By Mr. Friedman) Do you have any evidence to support that alcohol had anything to do with the actual injury in this case? A. (Pecoraro) I have a lifetime of experience with alcohol being served at events at various venues.  I can state that it increases the possibility of an accident. Specific to this case, I do not.") [ECF 70-1 43:25-44:7]. Specifically, he is concerned that drinks _may be_ spilled on the floor even though there is _no evidence_ that

occurred in this case: "Q. Okay. Is there any evidence that anything spilled on the dance floor? A I'm open to any additional evidence presented. At this time, no. Q. So the answer is 'no,' you're not aware of any evidence, correct? A. Correct."  [ECF 70 (Pecoraro Depo.) 43:8-14; 44:8-14]. Pecoraro's second opinion is nothing more than subjective speculation masquerading as scientific knowledge and is not an admissible expert opinion.

> Q. Okay. So we have established you have no evidence to support that alcohol had anything to do with the accident or that a spill had anything to do with the accident or that the slipperiness of the floor had anything to do with the accident, agreed? A. *Agreed*.

[ECF 70-1 45:11-16]. An expert's testimony must be based on facts which enable him to express a reasonably accurate conclusion (as opposed to conjecture or speculation). "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory,* 95 F.3d at 1331. "[T]o be permissible the expert must be in possession of the necessary facts which will allow the expert to form an accurate conclusion." *D & D Assocs., Inc.,* 411 F. Sup. 2d at 488; *see also Stecyk,,* 295 F.3d at 414 ("it is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Greenwell,* 184 F.3d  at 497 (expert testimony "is inadmissible when the facts upon which the expert bases his testimony contradict the evidence.").There is no evidentiary basis for his opinion and it should be excluded.

**2. Perlstein is Unqualified to Render his Fourth Opinion and it is Also Unreliable**

To the extent that it is even an opinion, Perlstein's conclusion that Celebrity conducted the Game where consumption of alcohol is not only permitted but encouraged is unreliable. [ECF 93-7 p. 3].  Perlstein believes that alcohol was encouraged at the Game venue based on his anecdotal and short-lived experience working as an officer on cruise vessels for a little over a year twenty years ago, his experience as a merchant officer on commercial vessels and as a passenger on cruise vessels where people were "always walking around asking if you want a drink." [ECF 72-1 46:8-47:10]. For all of the reasons set forth in section III(A)(1) above, he is unqualified to render this opinion.

Even if he had the requisite experience to render the opinion, it is inadmissible because it is based on speculation divorced from the facts of the case:

> Q.  Do you have any evidence, any basis to support your opinion that Celebrity Cruise Line's employees encouraged the consumption of alcohol while this game was being played on the date [ ] Krug was injured?
> A.  The fact that it's held at a bar.
> Q.  So that's your exclusive evidence, the fact that the game was being held at a bar; correct?
> A. And that alcohol is a big part of cruise line revenue, and that we had a bartender or bar waitress or two.
> Q. So that means alcohol was available –
> A. Right.
> Q. –  but you found it so far as to say that consumption of alcohol was encouraged while the game was being played, and I want to know the basis for that.
> A. That it's held in a bar and that they're offering drinks.
> Q. Did alcohol have something to do with this accident?
> A. ***I don't know.***

[ECF 72-1 47-11-48:8] (emphasis added). Perlstein did not interview anyone who was at the Game, and, in forming this opinion, he ignored Krug's testimony that alcohol did not cause or contribute to the alleged incident. [ECF 69-1 80:12-19]. It is an evidentiary requirement that expert opinion be connected to existing data by something more than the "it is so because I say it is so" of the expert. *See Holesapple v. Barrett,* 5 Fed. Appx. 177 (4th Cir. 2001); *see also Masferrer,* 367 F.Supp.2d at 1372 ("The trial court's gatekeeping function requires more than simply taking the expert's word for it."); *Slaughter v. Southern Talc. Co.,* 919 F.2d 304, 307 (5th Cir. 1990) ("[W]ithout more than credentials and a subjective opinion, an expert's opinion that 'it is so' is not admissible."); Fed. R. Evid. 702 advisory committee's note (2000 amendments) ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well reasoned, and not speculative before it can be admitted.").

It is imperative that speculation not be a substitute for scientific methodology because it is utterly insufficient to satisfy *Daubert's* most rigid and unwavering requirements. *See McClain,* 401 F.3d at 1242. If the expert is not testifying based upon research conducted independent of the litigation (which Pecoraro and Perlstein have not conducted), the party proffering the expert must come forward with other objective, verifiable evidence that the testimony is based on scientifically valid principles (which Krug has failed to do). *See Haggerty,* 950 F. Supp. 1160, 1162 (S.D. Fla. 1996). An expert cannot rely upon generic experience to establish the reliability of his or her expert opinion. *U.S. v. Frazier,* 387 F.3d at 1261 (maintaining that Rule 702's reliability requirement would be subsumed by the qualification prong if admissibility could be established merely by the

*ipse dixit* of the expert). Even a qualified expert may not offer opinions unless they result from the application of a thorough and reliable methodology based on objective criteria. Instead, Pecoraro and Perlstein's opinions have not, and cannot be, verified by any scientific methods and their theories are purely *ipse dixit*.

C. PERLSTEIN'S THIRD OPINION AND PECORAROS'S FOURTH OPINION SHOULD BE EXCLUDED

Perlstein's third opinion is "Celebrity [ ] created a scenario where the participants were encouraged to run and then decelerate very rapidly to grasp the very low microphone causing them to pitch forward." [ECF 93-7 p. 2]. Pecoraro's fourth opinion is that "Industry standards were not practiced when the host [ ] created a competitive environment for the participants which culminated in a climax of emotion when he required the person who knew the correct answer to run to stage and say it into a microphone before anyone else to win. This contributed to the accident and resulting injuries suffered by [ ] Krug." [ECF 93-8 p. 5]. Celebrity seeks to exclude Perlstein's third opinion because (1) he is unqualified to render an opinion about the mechanics of acceleration and deceleration when running and (2) it is also bereft of factual support in the record. Pecoraro's fourth opinion is unreliable since it is his own opinion.

**1. Perlstein Is Unqualified to Render an Opinion Concerning the Mechanics of Running**

At his deposition, Perlstein claimed that he was qualified to offer this opinion for two reasons. First, he likened running on a vessel to the stability and movement of cargo on a vessel: "Motion is motion, whether it's a piece of cargo or passengers are pieces of cargo." [ECF72-1 44:15-18]. Second, he claims that because he ran track more than twenty (20) years ago, he understands how running would affect a person. [72-1 44:19-45:6]. Perlstein also testified that he is qualified to opine on the dynamics of humans running because "I walk, I run, I fall." [72-1 71:25-73:2]. He bases the opinion solely on his "[p]ersonal physiological experience" and his experience on commercial, cargo and passenger vessels. [*Id.*]. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Clena Investments, Inc. v. XL Specialty Ins. Co.,* 280 F.R.D. 653, 661 (S.D. Fla. 2012) (*quoting Jack v. Glaxo Wellcome, Inc.,* 239 F.Supp.2d 1308, 1314-16 (N.D. Ga. 2002)). "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Clena Investments, Inc.,* 280 F.R.D. at 661 (*citing City of Tuscaloosa,* 158 F.3d at 562-63). As discussed above, the majority of Perlstein's experience has been on commercial vessels as an

officer and captain. See section IV(A)(1) above.  He has failed to demonstrate how experience with cargo moving is anything at all similar to people running in a game sufficient to qualify him as an expert on the mechanics and physiology of running. Moreover, running track more than twenty years ago does not make him sufficiently qualified to opine on the physiology and mechanics of running either. *Mitchell v. Royal Caribbean Cruises, Ltd.,* 2013 U.S. Dist. LEXIS 186339, *18 (S.D. Fla. June 7, 2013) (Ungaro, J.) (excluding expert opinion that plaintiff would not have been able to avoid fall because he was not a human factors expert by virtue of his experience or education); *Webb v. Carnival Corp.,* 2017 U.S. Dist. LEXIS 103856, *17-21 (S.D. Fla. July 6, 2017) (finding former police officer and security expert unqualified to render opinion regarding level of intoxication because he never explained how his background and experience qualified him to opine on toxicology). Perlstein failed to explain how his background and experience in cargo and running track more than twenty years ago makes him qualified to opine on the physiology and mechanics of running. His opinion should be excluded.

**2. Perlstein's Fourth Opinion is Unreliable Because It is Not based On Record Evidence**

In addition to being completely unqualified to provide an opinion on the mechanics and physiology of running, at his deposition, Perlstein admitted that his opinion was not based on the evidence in this case because he conceded that based on his review of the video, he does not believe that Krug *decelerated*, but rather that Celebrity created the environment in which this *could have happened*. [ECF 72-1 45:7-46:7]. This opinion should be excluded as unreliable.

**3. Pecoraro's Fourth Opinion Should Be Excluded as Unreliable Because It Is His *Ipse Dixit***

Pecoraro claims that he can tell from a video that Krug was excited and that her excitement in the Game was a contributing cause of her injuries. [ECF 70-1 54:3-56:15].  "I think that as she was excited. I think that this – what was a moment, as a look at the video, she – even though there's no sound on the video, the first moment I see her is her throwing her arms up in the air. To me, that indicates excitement." [ECF 70-1 56:2-6]. This is his personal opinion from watching a video. It is not based on any objective criteria or any cruise industry standards because he never mentioned any to support his opinion. The Eleventh Circuit has also made clear that

'merely telling the jury what result to reach is unhelpful and inappropriate." *Umana-Fowler,* 49 F. Supp. 3d at 1122 (citing *Montgomery,* 898 F.2d at 1541). At bottom, Pecoraro's methodology is a

review of whatever materials are provided to him by Krug's counsel blended with his anecdotal observations, leading to a conclusion that the cruise line is at fault. Courts in this District have precluded experts under similar circumstances. *Farley v. Oceania Cruises, Inc.,* 2015 U.S. Dist. LEXIS 30576, *18-19 (excluding expert opinion as unreliable because most of the opinions rendered were untethered to any supporting objective materials or sources or verifiable evidence in the case); *Leroux v. NCL (Bah.) Ltd.,* 2017 U.S. Dist. LEXIS 94156, *21-22 (S.D. Fla. June 19, 2017) ("Finally, Jaques' statement that NCL is at fault for not following the industry standard as other cruise line companies do to prevent this type of accident from happening and warning the passenger of the safety hazard in front of them lacks any reference to what constitutes an 'industry standard,' how Jaques determines what that standard is and whether a particular ship has complied with the industry standard, and how he has determined that the failure to comply with the industry standard causes the type of accident at issue. Jaques' opinions are the very type of *ipse dixit* that courts in this District have rejected"). Pecoraro's fourth opinion should be excluded.

## D.  PECORARO'S THIRD OPINION SHOULD BE EXCLUDED AS UNRELIABLE AND UNHELPFUL

Pecoraro's third opinion is that Celebrity "did not practice industry standards when they established a precedent for Mrs. Krug on previous cruises of how the music trivia game was to be played which did not involve running. This contributed to the accident." [ECF 93-8 p. 5].  He offered this opinion despite that fact that he has no evidence as to how the Game is played on other cruise lines. [ECF 70-1 51:10-13; 61:1-16].  Perlstein was also unable to testify whether the game host, Alphonso, had run the Game in the same manner before. [ECF 70-1 52:22-53:1].  Perlstein opined "I see five people standing up trying to win a contest and 20 percent of them are injured severely. I see an absence of an attitude and a culture of safety." [ECF 70-1 52:14-53:1].  This is his personal opinion and a conclusion that is not based on any objective criteria whatsoever. Additionally, he opined that "I do not see that running is safe in this situation.  I see that it is, in fact, negligent, yes." [ECF 70-1 53:20-24]. Proffered expert testimony generally will not help the jury when it offers "nothing more than what lawyers for the parties can argue in closing arguments." *Frazier,* 387 F.3d 1244, 1262-63. To this end, "while an expert may testify as to his opinions on an ultimate issue of fact, [ ] he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler,* 49 F. Supp. 3d at 1122 (*quoting United States v. Delatorre,* 308 F. App'x 380, 383 (11th Cir. 2009)). "Such expert opinion is not helpful and the risk is too great that the trier of fact will be confused or place undue weight on such an opinion." *Id.* at 1124.

In *Farley,* 2015 U.S. Dist. LEXIS 30576, at *2 (S.D. Fla. Mar. 12, 2015). Judge O'Sullivan struck an expert witness where he sought to provide maritime liability and safety opinions regarding "safety issues and the applicable standards of care and policies and procedures in the cruise ship industry for maintaining clear passageways for the safety of passengers and crew members and to opine regarding the cause of [the p]laintiff's fall . . . ." *Id.* The expert opined that the cruise line was "careless and negligent" and that the cruise line was "at fault" for the passenger's injury. *Id.* Those are impermissible legal conclusions. Judge O'Sullivan also found that the expert's methodology failed because, like Pecoraro, he failed to inspect the vessel or interview any crew members, (2) he did not cite to any publications or experiments to support his opinions, and (3) did not provide a detailed explanation of how his experience supports his opinions or what materials he consulted (other than the policies and procedures of competitor cruise line operators) to reach his conclusions.  2015 U.S. Dist. LEXIS 30576, *8. In this case, Pecoraro never even reviewed the policies or guidelines of other cruise lines and did not know how the Game was previously conducted by Alphonso or others nor did he ever interview anyone to attempt to determine what the Game "precedent" was in the industry.

In *Webb,* 2017 U.S. Dist. LEXIS 103856, at*24, the Court excluded an expert as unreliable where the expert's methodology was also patently deficient: "His expert report simply lists a number of conclusory statements without any foundation. He does not demonstrate whether he performed any analysis nor does he indicate whether his opinions were subject to any verification or peer review, or how his experience specifically informed his opinions. Neither his report nor his testimony references a single study, article, or authority to support his opinions." *Id.*  Pecoraro's third opinion is similarly both unreliable and unhelpful and should be excluded.

### E. PERLSTEIN'S SECOND OPINION SHOULD BE EXCLUDED AS UNRELIABLE AND UNHELPFUL

Perlstein's second opinion that Celebrity "encouraged a hazardous activity such as running on an unstable and moving platform" is both unreliable and unhelpful to the trier of fact. [ECF 93-7 p. 2]. Perlstein's opinion that running on a vessel is a "hazardous activity" is a legal conclusion and therefore unhelpful. *See* cases cited *infra*.  Additionally, his opinion is not based on any methodology, but rather his personal opinion. He claims that Celebrity encouraged a hazardous activity such as moving on an unstable moving platform because the movement of the ship *may cause* falls during a Game, but he never reviewed the *Infinity's* bridge log or the weather report to determine if there was any weather that might have caused the ship to become unstable at the time

of the alleged incident. [ECF 72-1 41:6-42:2]. Perlstein claims that movement *could have* made Krug lose her footing, but he admits there is *no evidence to support that theory*. [ECF 72-1 42:18-24; 43:22-44:1; 63:19-64:3]. He cannot say that the vessel rolled. [ECF 72-1 42:3-24]. His opinion was not based on the evidence.

> Q. You've made the statement that contributing cause could have been an unstable vessel. Is there any evidence to support that opinion?
> A. Not at this time.

[ECF 72-1 43:22-44:1; 52:4-6 (Q. There's no evidence to support that the ship moved and that caused [ ] Krug to fall? A. Not at this time")]. On the contrary, he admitted that Krug fell forward because she lost her balance and admitted it is possible that people just lose their balance. [ECF 72-1 52:11-17]. This opinion should be excluded as unhelpful because it is a legal conclusion and invades the province of the jury and it is unreliable because Perlstein was unable to articulate his methodology as it is simply a personal opinion untethered to the evidence in this case.

F. **PERLSTEIN'S FIFTH AND SIXTH OPINIONS SHOULD BE EXCLUDED AS UNRELIABLE AND UNHELPFUL**

Perlstein's fifth and sixth opinions relate to Celebrity's alleged failure to provide proper supervision to the crew conducting the Game and Celebrity failed to follow industry standards in "safely" conducting onboard activities. [ECF 93-7 p. 3]. His fifth opinion regarding lack of supervision is based on his review of Krug's deposition testimony because he thought there was another crewmember at the Game who may have been training Alphonso. [ECF 72-1 49:16-50:12]. Other than Krug's testimony, he has no basis to draw that conclusion and Krug was not aware of what crewmember was operating the Game. [*Id.*; ECF 69-1 72:21-22 (identifying game host as Christian); 80:6-11 (same)]. When asked about his opinion concerning the game host's training, Perlstein replied with the conclusion: "Not very well, obviously." [ECF 72-1 50:25]. He never identified any methodology he used to arrive at this opinion other than reading Krug's deposition testimony, which is not a methodology at all. Incredibly, Perlstein's sixth opinion is based on industry standards, but he could not identify *any* cruise line industry standards for conducting entertainment activities such as Games. [ECF 72-1 51:1-19]. He claimed that it is "common sense" that you don't run in a game. [*Id.*] An opinion based on "common sense" is not the proper subject of expert testimony. Perlstein fails to identify any sort of methodology based on objective criteria to support his conclusion: "you can look through all the cruise line regulations, there's nothing that

tells you don't play with matches. You don't play with matches, you don't run on a cruise vessel, you don't sit in stairways." [ECF 72-1 51:9-19]. After having opined based on industry standards, he could not identify one and instead unequivocally demonstrated that he relied on his personal opinion. [*Id.*] Perlstein's failure to have a methodology and his conclusory opinions are unhelpful to the trier of fact. For all of the reasons set forth above, these opinions should also be excluded.

**G. PECORARO'S FIFTH OPINION SHOULD BE EXCLUDED AS UNRELIABLE AND UNHELPFUL**

Pecoraro's fifth opinion is that Celebrity did not practice industry standards when the host [ ] placed the microphone on the edge of the stage at floor level. This contributed to the accident and resulting injuries suffered by [ ] Krug." [ECF93-8 p. 5]. When Pecoraro was asked if he reviewed any cruise line industry standards concerning the placement of microphones, because his report specifically states that his opinion would be based on cruise line standards, he said he would rely on his career, which has had nothing to do with the cruise line industry or its standards. [ECF 70-1 p. 59:14-24]. His failure to identify objective criteria for his opinion other than his *ipse dixit* renders the opinion unreliable inadmissible.

**H. PECORARO'S OTHER OPINIONS SHOULD BE EXCLUDED BECAUSE ONE WAS NOT IN HIS REPORT, THEY ARE UNRELIABLE AND UNHELPFUL**

At his deposition, Pecoraro testified about an opinion that was never included in his expert report that employees at the Game were not empowered to yell "stop" if they saw something dangerous. [ECF 70-1 61:17-63:9]. Pecoraro believes that the other employees were not so empowered because no one yelled "stop" during the Game. [ECF 70-1 61:17-62:4]. He bases that opinion on the video because he did not see anyone in the video stop in the Game. [ECF 70-1 62:5-63:1]. When asked what evidence he had to support his opinion that other crew members were not empowered to say "stop," Pecoraro said, "I don't have any evidence of that." [ECF 63:2-9]. This undisclosed opinion not only violates Rule 26 and this Court's pre-trial order, but it is based on sheer speculation and should be excluded as unhelpful and unreliable. *See* section II *infra.*

Finally, there is an un-numbered opinion in Pecoraro's report that is a legal conclusion with no support whatsoever: "The acts and omissions of Celebrity Cruises, Inc. were the cause of this accident and resulting life altering injuries suffered by Mrs. Krug" [ECF 93-8 p. 5]. This opinion or comment should be excluded because it is yet another legal conclusion and consists solely of argument of counsel. There is no methodological basis for it and it is not a bona fide expert opinion and is therefore unhelpful and unreliable.

Dated: August 29, 2017
Miami, Florida

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>

Undersigned counsel hereby certifies that counsel for the parties have conferred in a good

faith effort to resolve the issues raised in the motion prior to filing and have been unable to do so.

Respectfully submitted,
**FOREMAN FRIEDMAN, P.A.**

By: */s/  Catherine J. MacIvor*
Catherine J. MacIvor (FBN 932711)
cmacivor@fflegal.com
Darren Friedman (FBN 146765)
dfriedman@fflegal.com
One Biscayne Tower, Suite 2300
2 South Biscayne Boulevard
Miami, FL  33131
Tel: 305-358-6555/Fax: 305-374-9077
Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the

Court via CM/ECF on this August 29, 2017. I also certify that the foregoing was served on all

counsel or parties of record on the attached Service List either via transmission of Notices of

Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or

parties who are not authorized to receive electronic Notices of Filing.

By: */s/  Catherine J. MacIvor*
Catherine J MacIvor

## SERVICE LIST

CASE NO: 16-cv-22810-SCOLA/Otazo-Reyes

Jonathan A. Heller, Esq.
jonathan@jhellerlaw.com
Law Offices of Jonathan A. Heller, PA
Seybold Building, Suite #310
36 Northeast First Street
Miami, Florida 33132
Tel: 305-372-5000
Counsel for Plaintiff

Jeffrey A. Mitchell, Esq.
jmitchell@cochranfirm.com
Richard C. Ely, Jr., Esq.
rely@cochranfirm.com
The Cochran Firm – Metairie
One Galleria Boulevard, Suite #2130
Metairie, LA 70001
Tel: 504-309-5000
Counsel for Plaintiff

Darren W. Friedman, Esq.
dfriedman@fflegal.com
sargy@fflegal.com
Rachael M Fagenson, Esq.
rmitchell@fflegal.com
esullivant@fflegal.com
sargy@fflegal.com
ovanegas@fflegal.com
FOREMAN FRIEDMAN, PA
One Biscayne Tower – Suite #2300
2 South Biscayne Boulevard
Miami, Florida 33131
Tel: 305-358-6555/ Fax: 305-374-9077
Counsel for Defendant
Natasha K. Alcivar, Esq.
nalcivar@rccl.com
Royal Caribbean Cruises, Ltd.
1050 Caribbean Way
Miami, Florida 33132
Tel: 305-539-3943/ Fax: 305-539-6561
Counsel for Defendant