United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Janet Krug, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 16-22810-Civ-Scola |
| | ) |
| Celebrity Cruises, Inc., Defendant. | ) |

**Order on Cross-Motions for Summary Judgment**

Plaintiff Janet Krug brings this suit to recover damages for physical injuries that she sustained while onboard one of Celebrity Cruises, Inc.'s ("Celebrity's") ships. This matter is currently before the Court on the Defendant's Motion for Summary Final Judgment (ECF No. 85) and the Plaintiff's Motion for Partial Summary Judgment on Liability (ECF No. 87). For the reasons set forth below, the Court **grants** the Defendant's motion and **denies** the Plaintiff's motion.

1. **Background**

In January 2016, Krug and her husband took a two-week cruise on one of Celebrity's ships. (Compl. ¶ 6, ECF No. 1.) Krug had experienced back pain for approximately twenty years, and had four back surgeries prior to the cruise. (Def.'s Statement of Facts ¶¶ 1-2, ECF No. 86.) Running caused Krug pain, and she testified at her deposition that she could not run. (Pl.'s Dep. 62:17-20, 64:16-17, ECF No. 69-1.)

On January 16, 2016, Krug participated in a music trivia game in the Constellation Lounge onboard the ship. (Compl. ¶ 7.) She had played the same game twice before in the same location. (Pl.'s Dep. 69:24 – 70:3, ECF No. 76-1.) The January 16, 2016 game resulted in a tie among several contestants, and the crew member directing the game, Richard Alphonso, held a tie-breaker. (Compl. ¶ 8.) Alphonso placed a microphone on the edge of a raised stage in the lounge, some distance away from where the contestants were lined up. (*Id.*) He announced that he would play a song, and the first contestant to pick up the microphone and say the name of the song would win. (*Id.*) When the song began playing, Krug realized that it was her wedding song and thought "I need to win this, this is our wedding song." (Pl.'s Dep. 85:17-22.) Krug ran or quickly stepped towards the stage, and the next thing that she remembers is lying on the floor. (*Id.* at 85:23 – 86:4, 90:10 – 91:2.) Krug does not know what caused her to fall. (*Id.* at 87:12-14.) She does not recall tripping, slipping, colliding

with other passengers, being pushed, or encountering anything on the floor that caused her to fall. (*Id.* at 87:15-21, 89:4-7, 95:20 – 96:1.)

When Krug fell, her face struck the edge of the stage and she suffered severe injuries, which required her to be air-lifted to a hospital to undergo immediate surgery. (Compl. ¶ 10.) She subsequently filed this lawsuit against Celebrity,[1] asserting one count of negligence and one count of vicarious liability. Krug alleges that Celebrity's operation of the music trivia game was negligent and that Celebrity failed to warn passengers of the potential hazards associated with the game. (*Id.* ¶¶ 12-14.)

**2.    Legal Standard**

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

---

[1] Krug's husband, Michael Krug, was initially a named Plaintiff in this matter. However, Michael Krug's claims have been dismissed (ECF No. 15).

### 3. Analysis

Celebrity's Motion for Summary Judgment argues that it is not liable for Krug's injuries because any alleged risk involved in the music trivia game was open and obvious, no dangerous condition existed of which Celebrity had actual or constructive notice, and there is no evidence that Celebrity failed to use reasonable care in planning or implementing the music trivia game. (Def.'s Mot. for Summ. J. at 7-8.) Krug's Motion for Partial Summary Judgment on Liability argues that Celebrity's operation of the music trivia game was unsafe and created a foreseeable and unreasonable risk of harm. (Pl.'s Mot. for Partial Summ. J. at 6-7.)

Federal maritime law applies to actions for torts committed aboard a ship sailing in navigable waters. *See, e.g., Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989). "To plead negligence in a maritime case, a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014); *see also Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1236 (S.D. Fla. 2006) (Moreno, J.) (citations omitted). The Eleventh Circuit recently reaffirmed that, in addition to these four elements, a Plaintiff must prove that the defendant "'had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure.'" *Pizzino v. NCL (Bahamas) Ltd.*, No. 16-16812, 2017 U.S. App. LEXIS 18151, at *4 (11th Cir. Sept. 20, 2017) (quoting *Keefe*, 867 F.2d at 1322). This rule applies even where the defendant created the risk-creating condition. *Id.* at 5-7.

The duty of care owed by a cruise operator to its passengers is ordinary reasonable care under the circumstances. *Keefe*, 867 F.2d at 1322; *Isbell*, 462 F.Supp.2d at 1237. This duty includes a "duty to warn of known dangers that are not open and obvious." *Frasca v. NCL (Bahamas) Ltd.*, 654 Fed. App'x. 949, 952) (11th Cir. 2016) (citations omitted); *Isbell*, 462 F.Supp.2d at 1237 (quoting *Luby v. Carnival Cruise Lines, Inc.*, 633 F.Supp.40 (S.D. Fla. 1986) (Scott, J.)); *Lugo v. Carnival Corp.*, 154 F.Supp.3d 1351, 1346 (S.D. Fla. 2015) (Moore, J.). "Federal courts need not even reach the defendant's actual or constructive notice of a risk-creating condition if they determine that condition was an open and obvious danger." *Smith v. Royal Caribbean Cruises, Ltd.*, 620 Fed. Appx. 727, 730 (11th Cir. 2015) (citations omitted); *see also Carroll v. Carnival Corp.*, 2017 U.S. Dist. LEXIS 109673, at *11-12 (S.D. Fla. July 12, 2017) (Martinez, J.) (citations omitted). In determining whether a dangerous condition is open and obvious, courts apply the "reasonable person" standard. *Frasca*, 654 Fed. App'x. at 952 (citations omitted). A plaintiff's subjective observations are

irrelevant in determining whether a duty to warn existed. *Lugo*, 154 F.Supp.3d at 1346; *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, at *3 (S.D. Fla. Dec. 7, 2015) (Lenard, J.) (citations omitted).

  Krug acknowledges that Celebrity only had a duty to warn her of "latent dangers." (Pl.'s Opp. to Def's Mot. for Summ. J. at 4, ECF No. 99.) Krug argues that the music trivia game "was orchestrated with an inherently dangerous latent hazard – rushing the Constellation Lounge's raised stage." (*Id.*) However, Krug testified that the rules of the tie-breaker were explained to her in advance. (Krug Dep. 72:14 – 73:12, 80:20 – 81:11, ECF No. 76-1.) Thus, she knew that she would have to rush towards the stage to pick up the microphone, and the act of "rushing the Constellation Lounge's raised stage" was not a latent hazard. Although Krug testified that she did not think that the game was dangerous, her subjective point of view is not determinative. *See Lugo*, 154 F.Supp.3d at 1346 ("[w]hether a danger is open and obvious is determined from an objective, not subjective, point of view") (citations omitted).

  Courts in this district have held that in the absence of some hidden danger, the inherent risk of injury in recreational activities is open and obvious. *See, e.g. Magazine v. Royal Caribbean Cruises, Ltd.*, No. 12-23431, 2014 WL 1274130, at *6 (S.D. Fla. Mar. 27, 2014) (Seitz, J.) (holding that the general risk of injury on a surfing simulator aboard a cruise ship was open and obvious); *Mendel v. Royal Caribbean Cruises, Ltd.*, No. 10-23398, 2012 WL 2367853, at *4 (King, J.) (holding that the danger posed by exiting a swimming pool was open and obvious); *Young v. Carnival Corp.*, 2011 WL 465366, at *4 (S.D. Fla. Feb. 4, 2011) (King, J.); *Isbell*, 462 F.Supp.2d at 1237-38 (holding that the risk of encountering snakes in the river of a rainforest was open and obvious). For example, in *Young v. Carnival Corp.*, Judge King held that tripping is an open and obvious risk posed by hiking. 2011 WL 465366, at *4. Similarly, tripping and/or falling while rushing to be the first person to pick up a microphone is an open and obvious risk.

  Krug attempts to argue that "the risks associated with this acceleration and deceleration within a small enclosed space while aboard a vessel at sea is not perceivable to the naked senses." (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 5.) To the contrary, the size of the space that Krug was required to traverse and the fact that she was onboard a ship were open and obvious conditions. Courts have routinely held that conditions that are visible are open and obvious. *See, e.g., Smith v. Royal Caribbean Cruises, Ltd.*, 620 Fed. Appx. 727, 730 (11th Cir. 2015) (holding that the dangers posed by swimming in a pool with murky water were open and obvious); *Carroll*, 2017 U.S. Dist. LEXIS 109673, at *12 (holding that the arrangement of the lounge chairs over which the plaintiff tripped was open and obvious); *Lugo*, 154 F.Supp.3d at 1346 (holding that "any danger posed by descending a bunk bed ladder that did not reach the floor of the cabin

was open and obvious to Plaintiff"); *Luby*, 633 F.Supp. at 41-42 (holding that the presence of a ledge behind a shower curtain was an open and obvious condition). Moreover, Krug testified that she does not know why she fell. (Pl.'s Dep. 87:12-14.) Krug did not testify that she fell due to the "small enclosed space" or because of the movement of the ship, nor has she put forth any evidence that those factors actually caused her to fall. The Court has reviewed the CCTV videos of the incident provided by Celebrity, which show that Krug simply fell as she was running towards the stage. (Notices of Conventionally Filing CCTV Video, ECF Nos. 89, 95.) Although her fall resulted in tragic injuries, it is well-established that a cruise operator "is not the insurer of the safety of its passengers," *Isbell*, 462 F.Supp.2d at 1238, and Krug has failed to support her claim that Celebrity breached its duty to warn her of latent dangers.

Even if the Court were to find that the risks inherent in the tie-breaker were not open and obvious, Krug has presented no evidence that Celebrity had actual or constructive notice of a risk-creating condition. As an initial matter, the Court notes that the declaration that Krug submitted from the crew member who hosted the game stated that he had previous experience with the same tiebreaker on Celebrity ships, as well as with other similar guest activities, and that he was unaware that such activities were dangerous. (Decl. of Richard Alphonso ¶¶ 17-18, 47, 51, 53 ECF No. 84-1.) Nevertheless, Krug argues that "1 out of 5 participants [in the music trivia game] end up with a traumatic brain injury," and that therefore Celebrity cannot maintain that the activity was safe. (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 5.) This statement is disingenuous – the only accident that Krug references in any of her submissions to the Court is her own, and the tie-breaker in which she participated had five contestants. Thus, it appears that Krug is attempting to extrapolate her own accident to generally claim that one in five participants in the music trivia game end up with a traumatic brain injury. In *Isbell v. Carnival Corp.*, the plaintiff maintained that the fact that she was bitten by a snake on an excursion was proof that the potential for a snake bite existed. 462 F.Supp.2d at 1237. However, Judge Moreno noted that there was no evidence of any prior snake bites on that particular excursion, and held that "[t]he mere fact that an accident occurred does not give rise to the presumption of a dangerous condition." *Id.* at 1237-38 (citations omitted). Similarly, the fact that Krug was injured is insufficient on its own to prove that the game was dangerous or that Celebrity had actual or constructive notice of the allegedly dangerous condition.

Krug also argues that "the maritime and entertainment standards prohibit not just running, but running in a space too closed in to prevent a safe deceleration point, running on a dynamic vessel at sea; running in a space

which propelled her into raised stage upon which she violently struck her face." (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 19.) However, Krug has not provided the Court with copies of the standards that she references, nor has she provided any other proof that such standards exist. Indeed, one of Krug's experts admitted that he did not compare Celebrity's event guidelines with similar documents from any other cruise lines. (Pecoraro Dep. 41:14-18, ECF No. 70-1.) Krug's other expert admitted that he has not seen a prohibition against running on a vessel "beyond best practices and common sense." (Perlstein Dep. 32:1-19, 34:3-10, ECF No. 72-1.) That same expert testified that most ships have a track on which people are supposed to run, and that the act of running is not inherently dangerous in and of itself. (*Id.* at 34:11-17.) Thus, Krug has failed to support her argument that Celebrity's operation of the game violated industry standards.

The Court notes that Krug's experts have provided opinions concerning various dangers, including the dangers of running onboard a ship due to its movement, the dangers of accelerating and decelerating quickly, and the dangers of serving alcohol at a venue in which a game is being played. (*See, e.g.*, Pl.'s Opp. to Def.'s Mot. for Summ. J. at 6-8; Def.'s Resp. to Pl.'s Mot. for Summ. J. at 22, ECF No. 101.) Celebrity has moved to strike Krug's experts (ECF No. 117). However, neither of Krug's experts offered an opinion about what actually caused Krug to fall, and Krug has put forth no other evidence about the cause of her fall. Therefore, the Court need not rule on the merits of Celebrity's motion to strike because the opinions of Krug's experts about what *could* have caused her to fall or the factors that *could* have made the game dangerous are insufficient to avoid summary judgment. *See Weiner v. Carnival Cruise Lines*, No. 11-22516, 2012 WL 5199604, at *4 (S.D. Fla. Oct. 22, 2012) (Scola, J.) (citations omitted) (a party "cannot avoid summary judgment on some generalized theory of foreseeability that is divorced from the particular events in question."). In addition, the Court need not reach the merits of Krug's objections to the affidavit of Amanda Campos (ECF No. 105) or Celebrity's motion to strike portions of the affidavit of Richard Alphonso (ECF No. 102), as the contested portions of those affidavits have no bearing on whether the allegedly dangerous condition was open and obvious or whether Celebrity had actual or constructive notice of the condition.

Even viewing the evidence in the light most favorable to Krug, she has failed to set forth specific facts showing that there is a genuine issue for trial. Based on the undisputed material facts, a reasonable trier of fact could not find that Celebrity breached its duty of reasonable care to Krug. Since Krug's negligence claim fails, Krug's vicarious liability claim also fails. Finally, the Court notes that Krug's allegations of negligent training, to the extent they can be interpreted to assert a separate theory of recovery, fail as well, since a claim

of negligent training must be based on an injury resulting from a common law tort. *See Gutman v. Quest Diagnostics Clinical Laboratories, Inc.*, 707 F.Supp.2d 1327, 1331-32 (S.D. Fla. 2010) (Ungaro, J.) (citing *Footstar Corp. v. Doe*, 932 So.2d 1272, 1278 (Fla. 2d. Dist. Ct. App. 2006)).

**4. Conclusion**

Accordingly, the Court **grants** the Defendant's Motion for Summary Final Judgment (**ECF No. 85**) and **denies** the Plaintiff's Motion for Partial Summary Judgment on Liability (**ECF No. 87**). The Clerk shall **close** this matter. Any pending motions are **denied as moot**.

**Done and ordered**, at Miami, Florida, on September 22, 2017.

Robert N. Scola, Jr.
United States District Judge